" ROSE AMBROSE ", on Behalf of " MORRIS AMBROSE ", an Infant, Petitioner, v. " MICHAEL AMBROSE ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, January 30, 1951.

*Sidney Schwamm* for petitioner.

*Alex J. Glauberman* for respondent.

DISERIO, J. Petitioner though receiving pursuant to an agreement, and embodied in the decree of an Arkansas divorce, alimony in the sum of $200 monthly for her maintenance and support as well as for the maintenance and support of an only child makes application pursuant to section 92 and subdivision 1 of section 137, of the Domestic Relations Court Act of the City of New York for an order to compel respondent to provide more fairly for his infant son, and according to his substantial means.

The respondent admittedly earns $40,000 gross, and claims it nets him at least $20,000 net annually.

It is conceded, respondent is regularly paying the alimony provided for in the Arkansas decree, and that to the credit of the respondent other moneys have been expended by him for the child as well as for the mother.

---

* Names used herein are fictitious for the purposes of publication.

The parties were married in Indiana in 1939. They lived together as husband and wife until about August 10, 1943, when they separated in the city of New York. Since the date of marriage the parties have been, and now are, residents of the city, county and State of New York. The infant petitioner is the only issue of said marriage and is nine years of age.

Petitioner originally instituted an action for a separation in the Supreme Court, New York County, which resulted in a decree on June 21, 1944, in favor of the petitioner and against the respondent. The decree provided as follows: " Ordered, Adjudged and Decreed that the defendant pay to the plaintiff until such time as she remarries, alimony in the sum of $70.00 per week for her maintenance and support including the maintenance and support of the child thereafter; such permanent alimony to be paid each week commencing with the entry of the final decree herein; and until such time as the decree is entered, the defendant is to continue payments of temporary alimony as heretofore ordered."

Their marital status still unsatisfactory, they thereafter and on August 16, 1945, made arrangement that petitioner was to seek a divorce in Arkansas and that respondent was to appear in the same.

And as consideration for the respondent's appearing, the parties agreed to modify the decree of the New York Supreme Court as follows:

"(a) That the terms and conditions of a judgment in an action for a separation between the First and Second Parties dated the 15th day of January, 1944, and entered in the Supreme Court of the State of New York, County of New York, shall be modified as follows:

" That the First Party shall pay to the Second Party during the lifetime of the Second Party, or until such time as she remarries, alimony in the sum of Two Hundred ($200.00) Dollars per month for her maintenance and support, including the maintenance and support of the child, free of income tax, in addition to which the First Party shall pay for the medical care of the child, and if the First Party shall choose to have the child sent to any private school or summer camp, such expenses shall be likewise paid by him."

On October 23, 1945, a decree of divorce was obtained by the petitioner against the respondent in the State of Arkansas. The decree recites the appearance of the respondent pursuant to his said agreement with petitioner, and embodied the alimony as provided for the maintenance and support for the petitioner and the child.

Despite the New York decree of separation, the subsequent decree of divorce in Arkansas, and the provisions therein provided for as to alimony and support for both, on March 22, 1950, and after the Arkansas divorce, the petitioner made application pursuant to section 1170 of the Civil Practice Act in the New York Supreme Court for an order modifying the aforesaid judgment of separation so that " suitable and proper provision is made for the maintenance and support of Morris Ambrose, an infant ".

The respondent opposed said application and a short form order denying the application was made and entered on April 13, 1950, which read as follows: " Upon the foregoing papers this motion to modify decree is denied (see *Schacht* v. *Schacht*, 295 N. Y. 439; *Coe* v. *Coe*, 334 U. S. 378) ".

Thereafter and on April 20, 1950, petitioner obtained an order to show cause from Hon. Justice John McGeehan for a reargument of the said motion.

Again, as on the original application, the Supreme Court held (by order of Mr. Justice McGeehan, made and entered June 19, 1950): " Upon the foregoing papers this motion to reargue is granted. Upon reargument the court adheres to its original determination. It appears that both parties submitted to the jurisdiction of the court in the State of Arkansas and the court there acquired jurisdiction in personam as well as in rem and made provision for the support of plaintiff and the infant issue of the marriage in its final decree. This court cannot be regarded as an appellate court nor has this court the co-ordinate power to modify that decree. The circumstances shown in this motion vary from those shown in *Michell* v. *Michell* (276 App. Div. 1090), and the ruling in that case has no application to the facts shown herein."

Therefore, petitioner served and filed notices of appeal from both of said orders made by Mr. Justice McGeehan, and the appeal lies dormant, since petitioner has not perfected it, claiming a lack of funds. Counsel wisely assumes no real purpose can be served in completing the appeal. It appears quite likely it would be upheld since the Supreme Court lacked jurisdiction to consider solely, the rights of the minor child, once the Arkansas Court negated the decree of separation in the courts of New York, and that the Arkansas decree was entitled to full faith and credit (U. S. Const., art. IV, § 1) in this State.

It now is the contention, that the needs and situation of the infant can be considered by the Domestic Relations Court, within the provision of section 137 of the Domestic Relations

Court Act of the City of New York, and that in the consideration of the application, the court will take judicial notice of the greatly increased cost of living at present, as compared with 1943, or 1945, as well as the increasing needs of a growing child.

The adult parties merit little or perhaps no consideration or the sympathy of the court. On the other hand, the plight of the child or children in such a situation waive aside any such prejudice which may permeate the mind of the Justice prevailing upon such a matter. His duty is clear. If the child has been neglected and not adequately supported according to the means of the father, the court is empowered to, and should act.

The appalling manner in which a husband and wife may upon agreement barter their marital rights, obtain a decree of divorce in a foreign jurisdiction to the detriment of a child or their children is most shocking and abhorrent to those of our people who believe in the home, family life, the care and sacrifice involved in educating, guiding and supervising their children. Such adult parents in their desire for easy escape from their marital ties, often cause the children, although they are never parties, to become the shocking victims of such severed or broken homes. It unquestionably has considerable and a lasting effect upon their adult life. And yet, residence under such circumstance for the sole purpose of obtaining a divorce seems so easily obtainable in many of the States, outside of our own. Deeper scrutiny could be exercised, especially as to domicile, agreements between the parties, the rights and privileges of innocent and young children. Are not personal rights even paramount to property rights? The consideration of children should certainly be of the first importance.

Section 137 of the Domestic Relations Court Act of the City of New York specifically empowers this court to act on behalf of the infant where the marriage relationship has been terminated by judgment of a court of " competent jurisdiction, when valid in the State of New York ". " The Domestic Relations Court of the City of New York may, under sections 92 and subdivision 1 of section 137, of the New York City Domestic Relations Court Act, compel adequate support of a child where there has been a dissolution of the marriage of its parents by a foreign decree. (*Baroth* v. *Baroth,* 270 App. Div. 1025.) The full faith and credit clause of the Constitution of the United States (art. IV, § 1) does not prevent consideration of the needs of the child and the circumstances of both parents and an award in accordance therewith. (*Halvey* v. *Halvey,* 330 U. S. 610; *Estin* v. *Estin,* 334 U. S. 541, 545.) The laws of Arkansas (Rev. Stat., ch.

51, § 12; Ark. Stat., 1947, Ann., § 34–1213) permit its courts to alter the provisions of their decrees of divorce insofar as they deal with alimony and maintenance." (*Matter of Karchmer* v. *Kane,* 275 App. Div. 715.) (See *Mallina* v. *Mallina,* 167 Misc. 343.)

Subdivision 1 of section 137 of the Domestic Relations Court Act of the City of New York reads as follows: " If the marriage relationship shall have been terminated by final decree of the supreme court of the state of New York or by judgment of any other court of competent jurisdiction, when valid in the state of New York, a petition may be filed or an order for support made or enforced in the family court only for the benefit of a child of such marriage." (See, also, *Scrima* v. *Scrima,* 265 App. Div. 483.) And only recently, and on October 4, 1950, Mr. Justice JACOB PANKEN, one of our Justices, sitting in Kings County, in the case of *Farah* v. *Farah* (99 N. Y. S. 2d 972, 975) upheld the theory that pursuant to section 137 of the Domestic Relations Court Act, and the cases therein cited, " A change of circumstances certainly empowers this Court to make other provision than reserved in the award incorporated in the decree of divorce between parties." (See, also, " *Stone* " v. " *Stone* ", 44 N. Y. S. 2d 558.)

The alimony provided in the Arkansas decree for both is $200 monthly. I am without power to apportion or disturb it and yet, can provide for the child according to the father's present means. Since I am powerless to divide it, it is hereby ordered that the father in addition to the sum therein provided and which, he is regularly paying, be compelled to pay an additional sum of $115 monthly, solely and for the needs and requirements of the child. Payment to commence with the next payment of alimony due after due service of a copy of this order.

Further, and in the interests of justice and so that the father may enjoy more of the companionship and society of his said child, and the child likewise of his father in the way of visitation, the payment of this order is conditioned upon the father having visitation as follows:

On alternate week ends beginning on Friday afternoons after school, until Sunday at 8:00 P.M. For the summer months and the winter or spring holidays, as originally agreed and being carried out between the parties, except that the summer vacation period be extended for three weeks, instead of for two, as was originally agreed upon.